IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UCHENNA EGENTI, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 8:25-cv-00948-LKG |
| ) | |
| v. ) | Dated:  March 4, 2026 |
| ) | |
| JALEN R. CEPHUS, #1134, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this civil rights action, the Plaintiff, Uchenna Egenti, brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), Article 24 of the Maryland Declaration of Rights ("Article 24") and Maryland common law, against the Defendants, Officer Dominic Buie and Prince George's County (the "County") (collectively, the "County Defendants"), the Town of Forest Heights (the "Town"), Sergeant Jalen R. Cephus, Officer Taneisha Bigelow-Clark, Officer Jason Willet and DMV Security Service, LLC ("DMV Security").  ECF No. 1 at 9–19.

The County Defendants have moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 16 at 1.  The Town has also moved to dismiss the claims brought against it, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to bifurcate, pursuant to Fed. R. Civ. P. 42(b).  ECF No. 24 at 1.  The motions are fully briefed.  ECF Nos. 16, 24, 25, 26, 27 and 28.  No hearing is necessary to resolve the motions.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS** the Town's motion to dismiss (ECF No. 16); (2) **GRANTS-in-PART** and **DENIES-in-PART** the County Defendants' motion to dismiss (ECF No. 24); and (3) **DISMISSES**: (a) the Plaintiff's *Monell* and *Longtin* claims against the Town and the County in Counts I, II, III and XI of the complaint; (b) the Plaintiff's official capacity claims against Sergeant Cephus and Officers Bigelow-Clark, Willet and Buie in Counts I, II, III and XI of the complaint; and (c) the Plaintiff's state law tort claims against the Town and County in Counts IV, VI, VII, IX and X of the complaint.

1

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Factual Background

In this civil action, the Plaintiff brings Section 1983, Article 24 and Maryland common law claims against the Defendants Dominic Buie, Prince George's County, the Town of Forest Heights, Sergeant Jalen R. Cephus, Officer Taneisha Bigelow-Clark, Officer Jason Willet and DMV Security Service, LLC, arising from an altercation that occurred on September 3, 2023, at the BJ's Wholesale Club ("BJ's") located at 1781 Ritchie Station Court, Capitol Heights, Maryland, Prince George's County.  ECF No. 1 at 9–19.  Specifically, the Plaintiff asserts the following claims in the complaint: (1) Section 1983 (Fourth Amendment/Excessive Force) against all Defendants  (Count 1); (2) Section 1983 (Fourth Amendment/False Arrest and Malicious Prosecution) against DMV Security, Sergeant Cephus, Forest Heights and the County Defendants (Count 2); (3) Article 24 against all Defendants (Count 3); (4) assault and battery against DMV Security, Sergeant Cephus, Officer Buie, Officer Willet and Officer Bigelow-Clark (Count 4); (5) false imprisonment against all Defendants (Count 6); (6) intentional infliction of emotional distress against all Defendants (Count 7); (7) negligence against all Defendants (Count 8); (8) malicious prosecution against Sergeant Cephus, the County Defendants and Forest Heights (Count 9);  (9) abuse of process against Officer Cephus, the County Defendants and Forest Heights (Count 10); (10) Section 1983 (*Monell* claim for failure to train, supervise, and implement policies) against Forest Heights (Count 11).  *Id.*  As relief, the Plaintiff seeks, among other things, to recover compensatory damages, punitive damages and attorneys' fees.  *Id.*

The Parties

The Plaintiff Uchenna Egenti is a resident of Washington, DC.  ECF No. 1-1 at 1.

The Defendant Dominic Buie is an Officer of the Prince George's County Police Department ("PGPD").  ECF No. 1 at ¶ 10.

The Defendant Prince George's County, Maryland is a local government entity.  *Id.* at ¶ 11.

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the County Defendants' motion to dismiss and the memorandum in support thereof; the Town's motion to dismiss and the memorandum in support thereof; the exhibits attached thereto; and the Plaintiff's responses in opposition to the Defendants' respective motions.  ECF Nos. 1, 16, 24, 27 and 28.  Unless otherwise stated, the facts are undisputed.

The Defendant the Town of Forest Heights is a municipality within Prince George's County, Maryland. *Id.* at ¶ 9.

The Defendant Jalen R. Cephus is a Sergeant of the Forest Heights Police Department ("FHPD"). *Id.* at ¶ 5.

The Defendant Taneisha Bigelow-Clark is an Officer of the FHPD. *Id.* at ¶ 7.

The Defendant Jason Willet is an Officer of the FHPD. *Id.* at ¶ 8.

The Defendant DMV Security Service, LLC is a security agency. *Id.* at ¶ 6.

<u>The Plaintiff's Arrest, Hospitalization And Detention</u>

As background, on September 3, 2023, at approximately 11:00 am, the Plaintiff was shopping at the BJ's Wholesale Club located at 1781 Ritchie Station Court, Capitol Heights, Maryland, when an employee of BJ's allegedly falsely accused her of disorderly conduct. *Id.* at ¶ 12. The BJ's employee called the police after the Plaintiff attempted to use a coupon for groceries that she had already purchased. *Id.*

Sergeant Cephus of the FHPD arrived on the scene and the Plaintiff alleges that he was not responding to an emergency. *Id.* at ¶¶ 13 and 14. Officer Buie of the PGPD also arrived on the scene. *Id.* at ¶ 16.

The Plaintiff alleges that Sergeant Cephus and Office Buie physically forced her to the ground without justification or consent. *Id.* at ¶¶ 16–17. The Plaintiff also alleges that she did not resist arrest, and that she was not advised as to why she was being handcuffed and dragged outside to a police vehicle. *Id.* at ¶¶ 18–20.

The Plaintiff alleges that she was handcuffed and intentionally shoved into an extremely hot police vehicle by Sergeant Cephus and Officer Buie. *Id.* at ¶ 21. The Plaintiff also alleges that she was left in the hot police vehicle without ventilation for more than 30 minutes. *Id.* at ¶ 26. In addition, the Plaintiff alleges that she was then driven away from the BJ's, at a high rate of speed, without a seatbelt, to the University of Maryland Medical Capital Regional Health Center located in Largo, Maryland. *Id.* at ¶¶ 27–31.

The Plaintiff alleges that she was forcibly taken into the medical center by Sergeant Cephus, Officer Willet and Officer Bigelow-Clark and then handcuffed to a wall. *Id.* at ¶¶ 31–32. The Plaintiff also alleges that Sergeant Cephus threatened to take photos of her in a distressed state and post them online. *Id.* at ¶ 33. Thereafter, the Plaintiff was transported to the detention center, and the Plaintiff alleges that she was held in isolation for approximately 16

3

hours without food, water or medical care, despite her requests for medical attention.  *Id.* at ¶¶ 34–37.

The Plaintiff alleges that she was not informed about the charges brought against her until September 4, 2023.  *Id.* at ¶ 38.  The Plaintiff also alleges that she suffered physical injuries, and that her disabled minor son was left without a caretaker during her arrest and detention.  *Id.* at ¶¶ 39–40 and 42.  In this regard, the Plaintiff contends that she was arrested by Sergeant Cephus and Officer Buie without probable cause and charged with disorderly conduct, failure to obey a lawful order and resisting arrest.  *Id.* at ¶¶ 43–44.  The Plaintiff further contends that the charges brought against her were initiated by Sergeant Cephus and Officer Buie to conceal the officers' use of excessive force against her.  *Id.* at ¶ 45.

On November 27, 2023, all charges against the Plaintiff were dismissed by *nolle prosequi*. *Id.* at ¶¶ 46–47.  And so, the Plaintiff further contends that the dismissal of the charges brought against her was favorable and supports her claim for malicious prosecution.  *Id.* at ¶¶ 48–49.

### B.    Procedural History

The Plaintiff commenced this matter on March 23, 2025.  *Id.*  On April 21, 2025, Officer Bigelow-Clark, Sergeant Cephus and Officer Willet answered the complaint.  ECF No. 15.

On April 21, 2025, the Town filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, to bifurcate, pursuant to Fed. R. Civ. P. 42(b), and a memorandum in support thereof.  ECF No. 16.

On April 29, 2025, DMV Security filed an answer.  ECF No. 21.  On May 5, 2025, the County Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof.  ECF No. 24.

On May 5, 2025, the Plaintiff filed a response in opposition to the Town's motion to dismiss and a response in opposition to the County Defendants' motion to dismiss.  ECF Nos. 25 and 26.

On May 12, 2025, the Town filed a reply.  ECF No. 27.  On June 3, 2025, the County Defendants filed a reply.  ECF No. 28.

The Defendants' motions to dismiss having been fully briefed, the Court resolves the pending motions.

4

### III.    LEGAL STANDARDS

#### A.    Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)). [2]

#### B.    Section 1983 And *Monell* Claims

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors. *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages). "[l]iability under § 1983 attaches only upon a showing of personal participation" against the individual defendants in the case. *Chew v. Platt*, No. 20-3075, 2022 WL 294500, at *4 (D. Md. Jan. 27, 2022) (citing *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)).

---

[2] The United States Court of Appeals for the Fourth Circuit has held that the Court may consider documents beyond the complaint when considering a motion to dismiss under Rule 12(b)(6), if the documents are "explicitly incorporated into the complaint by reference" or are "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998).

5

To establish personal liability under Section 1983, a plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights and the official's own individual actions must have violated the Constitution. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). Section 1983 also permits a plaintiff to bring a claim directly against a municipality, if the municipality causes a deprivation of a constitutional right through an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Given this, a municipality may be liable under Section 1983 when a municipality's "policy or custom" has caused the violation of an individual's federal rights. *Monell*, 436 U.S. at 690–95. But, a county or municipality "cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual . . . officer,' at least in suits for damages." *Waybright v. Frederick Cnty.*, 528 F.3d 199, 203 (4th Cir. 2008) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024). In this regard, the Fourth Circuit has held that a *Monell* plaintiff must adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). And so, the municipality's conduct must demonstrate "deliberate indifference to the rights of potentially affected citizens" for conduct to be properly thought of as a "policy." *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997).

### C.   Article 24 Of The Maryland Declaration Of Rights

Article 24 of the Maryland Declaration of Rights provides that "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Decl. of Rts. art. 24. Article 24 protects due process rights and is the Maryland "analogue to the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution." *Rovin v. State*, 321 A.3d 201, 218 (Md. 2024) (citing *State v. Dett*, 891 A.2d 1113, 1120 n.3 (Md. 2006)).

### D.   Governmental Immunity

"The doctrine of sovereign immunity from suit . . . is firmly embedded in the law of Maryland." *Katz v. Wash. Suburban Sanitary Com'n*, 284 Md. 503, 507 (1979). Given this,

6

Maryland courts have held that "'[g]overnmental immunity'. . . is not only applicable to the State itself, but also applies generally to a county of the State and to the State's municipal political subdivisions and local agencies, unless the General Assembly either directly or by necessary implication has waived the immunity." *Austin v. City of Balt.*, 405 A.2d 255, 256 (Md. 1979) (citing *Godwin v. Cnty. Comm'rs*, 256 Md. 326, 334 (1970)).

Governmental immunity is limited to local governmental entities, such as counties, municipalities and local agencies. Under Maryland law, a "municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity." *Nam v. Montgomery Cnty.*, 732 A.2d 356, 362 (Md. 1999) (quoting *Godwin*, 260 A.2d at 299. Relevant here, this Court has recognized that the operation of a police force is a governmental function under Maryland law. *Williams v. Prince George's County*, 157 F. Supp. 2d 596, 604 (citing *Hector v. Weglein*, 558 F. Supp. 194, 206 (1982)). Maryland courts have also held that "governmental" acts are those "performed . . . for the common good of all," rather than "for the special benefit or profit" of the municipality. *Tadjer v. Montgomery Cnty.*, 479 A.2d 1321, 1325 (Md. 1984). And so, "[a] local governmental entity is liable for its torts, if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino v. Davis*, 729 A.2d 354, 369–70 (1999).

## IV.    ANALYSIS

The Defendants have moved to dismiss certain claims in this matter for several reasons. First, the Town seeks to dismiss the Plaintiff's claims against it, upon the grounds that: (1) the Plaintiff fails to state a plausible *Monell* claim, because she does not identify a municipal policy, practice or custom attributable to the Town, or identify a specific custom or policy that caused the alleged violations in this case to support her excessive use of force and failure to train claims; (2) the Plaintiff's official capacity claims against Officers Cephus, Bigelow-Clark and Willet must fail as a matter of law for the same reason; (3) for the same reason, the Plaintiff's *Longtin* claim against the Town must also fail; and (4) the Plaintiff's state common law tort claims are barred by governmental immunity. *See generally* ECF No. 16-1. In the alternative, the Town requests that the claims brought against it be bifurcated for discovery and trial purposes. *Id*. at

11. And so, the Town requests that the Court either dismiss the claims brought against it in in this case, or bifurcate these claims and stay discovery. *Id*. at 13.

Second, the County Defendants seek to dismiss the claims brought against them, upon the grounds that: (1) the Plaintiff fails to state a plausible *Monell* claim, because she does not identify a municipal policy, practice, or custom attributable to the County, or identify a specific custom or policy that caused the alleged violations in this case to support her excessive use of force and failure to train claims; (2) the Plaintiff's official capacity claims against Officer Buie must fail as a matter of law for the same reason; (3) for the same reason, the Plaintiff's *Longtin* claim against the Town must fail as a matter of law; (4) the Plaintiff's state common law tort claims are barred by governmental immunity with regard to the County; (5) Officer Buie is entitled to public official immunity for the Plaintiff's state law claims; (6) the complaint fails to state a claim for malicious prosecution; and (7) the official capacity claim against Officer Buie should be dismissed, because the claim is treated as a claim against the County. *See generally* ECF No. 24-1. And so, the County and Officer Buie requests that the Court dismiss all claims brought against them in this case. *Id.* at 10.

In her responses in opposition to the Defendant's motions, the Plaintiff counters that Court should not dismiss her *Monell* and *Longtin* claims against the Town, because: (1) she has alleged facts to show that the Town lacks policies on the use of tasers, seatbelt protocols, jurisdictional limits during secondary employment, extraterritorial arrest and unchecked secondary employment policies and (2) she has identified eight comparator agencies that have policies on these topics in the complaint.[3] ECF No. 25-1 at 6. The Plaintiff also argues that she states a plausible *Longtin* claim against the County, because Officer Buie participated in the alleged constitutional violations. *Id.* at 6–7.

In addition, the Plaintiff argues that governmental immunity does not bar her state common law tort claims against the Defendants, because this doctrine does not apply to claims based upon rights protected by the Maryland State Constitution. ECF No. 25-1 at 13–16. Lastly, the Plaintiff argues that she states a plausible malicious prosecution claim against the County

---

[3] The Plaintiff concedes that she fails to state a *Monell* claim and an official-capacity claim against the County Defendants in Counts I and II of the complaint. ECF No. 26-1 at 6.

Defendants. *Id.* at 10–11. And so, the Plaintiff requests that the Court deny the Defendants' respective motions to dismiss. *Id.* at 19.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiff fails to state plausible *Monell and Longtin* claims against the Town and County. The complaint also makes clear that the Plaintiff fails to state plausible official capacity claims against Sergeant Cephus and Officers Bigelow-Clark, Willet and Buie.

The Defendants also persuasively argue that the Plaintiff's state common law tort claims against the Town and County for assault and battery, false imprisonment, intentional infliction of emotional distress, malicious prosecution and abuse of process are barred by the doctrine of governmental immunity. But, the Court is satisfied that the Plaintiff states a plausible claim for negligence in the complaint, based on her alleged "rough ride." Lastly, the Defendants have not shown that Officer Buie is entitled to public official immunity for the Plaintiff's state law claims. And so, the Court (1) **GRANTS** the Town's motion to dismiss (ECF No. 16); (2) **GRANTS-in-PART** and **DENIES-in-PART** the County Defendants' motion to dismiss (ECF No. 24); and (3) **DISMISSES**: (a) the Plaintiff's *Monell* and *Longtin* claims against the Town and the County in Counts I, II, III and XI of the complaint; (b) the Plaintiff's official capacity claims against Sergeant Cephus and Officers Bigelow-Clark, Willet and Buie in Counts I, II, III and XI of the complaint; and (c) the Plaintiff's state law tort claims against the Town and County in Counts IV, VI, VII, IX and X of the complaint.

### A.    The Court Dismisses The Plaintiff's *Monell* And *Longtin* Claims[4]

As an initial matter, a careful reading of the complaint shows that the Plaintiff fails to allege facts to show that her harm was caused by the implementation of an official policy, practice, or custom, to support her *Monell* and *Longtin* claims against the Town. The Plaintiff may bring a Section 1983 claim directly against a municipality, if the municipality causes a deprivation of a constitutional right through an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis omitted). Given this, there must be a "policy or

---

[4] Because the Court will dismiss the Plaintiff's *Monell* claims against the County and Town, the Court does not reach the issue of whether to bifurcate this case for the purposes of discovery and trial.

custom" that caused the violation of an individual's federal rights, for a municipality to be liable under Section 1983. *Monell*, 436 U.S. at 690-95. And so, to sufficiently plead a *Monell* claim, the Plaintiff must allege "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Relevant to this dispute, the Fourth Circuit has held that a policy or custom giving rise to a Section 1983 claim cannot be "inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees," *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984), unless the municipality's conduct demonstrates "deliberate indifference" to the rights of its inhabitants. *See Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (citing *City of Canton*, 489 U.S. at 389). Only if such deliberate indifference is shown may the conduct properly be considered a "policy or custom" actionable under Section 1983. *See id.* If the Plaintiff fails to state a *Monell* claim, the Court need not conduct an independent analysis of her *Longtin* claim. *See Palma v. Montgomery County*, 598 F. Supp. 3d 288, 297 n.5 (D. Md. 2022) ("*Monell* and *Longtin* claims rise or fall together, and the Court need not undertake an independent analysis of the sufficiency of the latter."); *see Krell v. Queen Anne's Cnty.*, No. 18-637, 2018 WL 6523883, at *15 (D. Md. Dec. 12, 2018).

In this case, the complaint makes clear that the Plaintiff fails to identify a policy or custom attributable to the Town that could give rise to a Section 1983 claim. In the complaint, the Plaintiff generally alleges that the Town "failed to educate, train and supervise [Sergeant] Cephus on any policy prohibiting the use of his departmental taser on stun-drive; and or, the Town of Forest Heights does not have a mandatory policy on the use of tasers by their officers on stun-drive unlike other Maryland police agencies." ECF No. 1 at ¶ 25. The Plaintiff also cites such policies for other Maryland municipalities. *Id.* But the Plaintiff does not identify a "policy or custom" of the Town that caused the alleged violations of her rights. *See id.* at ¶ 25. Given this, the Plaintiff's *Monell* claim against the Town is not plausible. *See Jordan ex rel. Jordan*, 15 F.3d at 338.

For these same reasons, the Plaintiff's *Longtin* claims against the Town and County, and the Plaintiff's official capacity claims against Sergeant Cephus and Officers Bigelow-Clark, Willet and Buie, must also be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). And so, the Court DISMISSES these claims. *See* Fed. R. Civ. P. 12(b)(6).

**B.      The Court Dismisses The Plaintiffs Tort Claims Against The Town And County**

A careful reading of the complaint also shows that the Town and County are entitled to governmental immunity with regard to the Plaintiff's non-constitutional common law tort claims in Counts IV, VI, VII, IX and X of the complaint.  Under Maryland law, counties and municipalities generally enjoy immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are private or proprietary.  *Clark v. Prince George's Cnty*, 211 Md. App. 548, 557 (2013).  In this regard, Maryland courts have held that the Local Government Tort Claims Act ("LGTCA") does not waive immunity when the government is sued in its official capacity.  *Khawaja v. City of Rockville*, 89 Md. App. 314, 325 (1991) ("The LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity.").  And so, generally, the County and Town cannot be held liable for state common law tort claims.

In this case, the Plaintiff seeks to bring state common law tort claims against the Town and County, for among other things, assault and battery, false imprisonment, intentional infliction of emotional distress, malicious prosecution and abuse of process.  ECF No. 1 at 13–18.  The LGTCA provides no waiver to the Town's and County's governmental immunity with respect to such claims.  *Martino v Bell*, 40 F. Supp. 2d. 719, 723 (D. Md. 1999) (stating that the LGTCA does not allow a plaintiff to name a county directly in a common law tort suit).  And so, the Court must also DISMISS these state common law tort claims against the County and Town in Counts IV, VI, VII, IX and X of the complaint.

But the Plaintiff's negligence claim against the County and Town, regarding her alleged "rough ride," is on somewhat firmer footing.  In the complaint, the Plaintiff alleges that the Defendants were negligent, because, among other things, Officers Buie and Sergeant Cephus gave the Plaintiff a "rough ride" following her arrest.  ECF No. 1 at 100.  As the Defendants acknowledge, Maryland law removes governmental immunity for negligent operation of vehicle claims.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-639.

Given this, the County and Town may not raise governmental immunity as a defense to the Plaintiff's claim for damages resulting from the negligent operation of a motor vehicle.  And so, the Court declines to dismiss the Plaintiff's negligence claims against the County and Town, based upon her alleged "rough ride," in Count VIII of the complaint.

11

### C.    The Court Declines To Dismiss The Remaining Claims Against Officer Buie

Turning to the Plaintiff's remaining claims against Officer Buie, the County Defendants argue without persuasion that Officer Buie is entitled to immunity from the Plaintiff's state tort claims. *See* ECF No. 24 at 9. Maryland courts have held that law enforcement officers have immunity under the law enforcement officer's privilege for non-malicious, discretionary acts performed in the course of their official duties. *See Davis v. Muse*, 51 Md. App. 93, 98 (1982). But such public official immunity does not extend to intentional torts. *Houghton v Forrest*, 412 Md. 578, 588–89 (2010). Here, the Court is satisfied that the complaint alleges sufficient factual allegations that, taken as true, show that Officer Buie acted with malice by participating in fabricating charges, using excessive force and abusing the process. ECF No 1 at ¶¶ 17–21, 45, 68–69, 78–81, 83–87 and 102–110. And so, the Court declines to dismiss the Plaintiff's state law tort claims against Officer Buie.

The County Defendants' argument that the Plaintiff fails to state a plausible malicious prosecution claim against Office Buie is also not persuasive. The complaint contains sufficient factual allegations to satisfy the elements of this claim. To state a claim for malicious prosecution, the Plaintiff must allege facts to show that: (1) the Defendants instituted or continued a criminal proceeding against her; (2) without probable cause; (3) with malice; and (4) that the criminal proceeding terminated in the Plaintiff's favor. *Okwa v Harper*, 360 Md. 161, 183 (2000). A careful reading of the complaint shows that the Plaintiff has alleged facts that, taken as true, satisfy the elements of this claim.

First, while the Plaintiff states in the complaint that Segreant Cephus filed the criminal charges brought against her, she also alleges that Officer Buie actively participated in the events that led to her arrest and prosecution. ECF No 1 at ¶¶ 17–21, 43–45, 68–69 and 103–104.

Second, the complaint alleges facts to show the absence of probable cause for the Plaintiff's arrest. *Id.* at ¶¶ 12-16, 18, 44, 67, 71 and 104.

Third, the complaint alleges facts to show malice on the part of Officer Buie. *Id.* at ¶¶ 45, 69, 74 and 104. Notably, the Plaintiff alleges that:

- Buie and Cephus, without legal justification or consent then grabbed Egenti by her arms and about her body, causing great pains and began physically attacking her in contorting her body, pulling her in opposite directions and slamming her into her shopping cart and other hard objects nearby, before forcing her onto the floor with their pulling, tripping her to take her legs

12

from underneath her and applying pressure from their respective body weight.

- Egenti was in severe pain, fearful of the present and impending physical attack of Defendants and thought she was going to be slammed onto the ground face first, without an ability to brace or protect her vital body parts as defendants continued dragging, punching and pulling her in all directions. Nevertheless, Plaintiff did not physically resist or attempt to resist an arrest, nor did Plaintiff attempt to flee the painful grips of Defendants Cephus and Buie.

- No defendant advised Egenti why she was being physically grabbed, dragged and beat. Defendants Cephus and Buie, together, handcuffed Plaintiff and dragged her out of the merchandise section of the store, to Cephus Forest Heights police vehicle (SUV car No. 427) situated outside the store entrance doors.

- Plaintiff was aggressively dragged towards the police vehicle, by both Cephus and Buie in an intentionally overly aggressive manner designed to and did prevent Plaintiff from gaining stability or an ability to walk and keep up with their fast-moving pace, causing her ankles to twist, further injuring her and causing more excruciating physical pain.

- Buie and Cephus, with Egenti's hands hand-cuffed behind her back, then intentionally shoved Egenti into the rear seat of an extremely hot Forrest Heights police SUV, through the rear passenger side door, causing her to hit her head and body on the seats, causing more pain and suffering. At all relevant times, the temperature outside was 97 degrees Fahrenheit and Egenti found it very difficult to breath inside the SUV.

- On September 3, 2023, Defendants Cephus and Buie arrested Plaintiff without probable cause at BJ's Wholesale Club in Capitol Heights, Maryland.

*Id.* at ¶¶ 17, 18, 19, 20, 21 and 45 (emphasis added). Lastly, the complaint makes clear that the criminal proceeding against the Plaintiff was terminated in her favor. *Id.* at ¶¶ 47, 48, 70–71 and 105. Given this, the Plaintiff states a plausible malicious prosecution claim against Officer Buie. And so, the Court also declines to dismiss this claim.

13

## V.    CONCLUSION

For the foregoing reasons, the Court:

    (1) **GRANTS** the Town's motion to dismiss (ECF No. 16);

    (2) **GRANTS-in-PART** and **DENIES-in-PART** the County Defendants' motion to dismiss (ECF No. 24); and

    (3) **DISMISSES**:

        (a) the Plaintiff's *Monell* and *Longtin* claims against the Town and the County in Counts I, II, III and XI of the complaint;

        (b) the Plaintiff's official capacity claims against Sergeant Cephus and Officers Bigelow-Clark, Willet and Buie in Counts I, II, III and XI of the complaint; and

        (c) the Plaintiff's state law tort claims against the Town and County in Counts IV, VI, VII, IX and X of the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

                              s/ Lydia Kay Griggsby
                              LYDIA KAY GRIGGSBY
                              United States District Judge